IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **RONALD TELLEZ,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. **07-225-CJP** |
| | ) | |
| **ALAN UCHTMAN, BETSY SPILLER,** | ) | |
| **WILLIAM REARDON, Lt. WALLER,** | ) | |
| **and Sgt. McDANIELS**, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

This matter is before the Court on defendants' Motion for Summary Judgment. **(Doc. 42)**. The motion is supported by exhibits consisting of plaintiff's deposition, plaintiff's answers to interrogatories, and plaintiff's interrogatories directed to defendants. Defendants served the notice required by *Lewis v. Faulkner*, **689 F.2d 100, 102 (7th Cir. 1982)**. **(Doc. 43)**. Plaintiff filed a memorandum and exhibits in opposition at **Doc. 45.**

### Nature of Plaintiff's Claim

Plaintiff Ronald Tellez is an inmate in the custody of the IDOC. He brings suit pursuant to 42 U.S.C. §1983. From March, 2005, through February, 2006, plaintiff was housed in the protective custody unit at Menard Correctional Center. He alleges that, at that time, there were no designated non-smoking cells in the protective custody unit. Plaintiff is a non-smoker, but, except for six weeks, he was housed with cellmates who smoked. On preliminary review, the Court found that plaintiff stated two claims. First, he stated a claim for violation of his Eighth Amendment rights due to exposure to environmental tobacco smoke ("ETS"). Plaintiff does not

1

claim that this exposure has caused him a present injury. Rather, his claim is for future injury arising from such exposure. Secondly, he has stated a claim for retaliation for his exercise of his First Amendment rights in that he alleges that defendants celled him with smokers in retaliation for his filing of grievances and making complaints about being exposed to ETS. See, Doc. 7.

## Grounds for Summary Judgment

Defendants argue that they are entitled to summary judgment on Count 1 because plaintiff cannot produce competent medical evidence that he faces a defined level of increased risk of developing a serious medical condition caused by exposure to ETS during the period in question.

As to Count 2, they argue that plaintiff's deposition testimony and answers to interrogatories establish that he has no evidence that any defendant retaliated against him.

## Standard for Summary Judgment

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Estate of Suskovich v. Anthem Health Plans of Virginia, Inc.*, 553 F.3d 559, 563 (7th Cir. 2009), *citing* Fed. R. Civ. P. 56(c). *Accord, Breneisen v. Motorola, Inc.*, 512 F.3d 972 (7th Cir. Cir. 2008); *Levy v. Minnesota Life Ins. Co.*, 517 F.3d 519 (7th Cir. 2008).

In ruling on a summary judgment motion, the Court construes all facts and reasonable inferences in the light most favorable to the non-moving party (here, plaintiff). *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 600 (7th Cir. 2009); *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 630 (7th Cir. 2007); *Reynolds v. Jamison*, 488 F.3d 756, 764

**(7th Cir. 2007).**

In response to summary judgment, the non-movant cannot rest on his pleadings. Rather, the non-movant must provide evidence on which the jury or court could find in *his* favor. *Maclin v. SBC Ameritech*, **520 F.3d 781, 786 (7th Cir. 2008).** As the Seventh Circuit recently explained:

> [T]he non-moving party must submit evidence that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Ptasznik v. St.Joseph Hosp.*, 464 F.3d 691, 694 (7th Cir. 2006). The existence of merely a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmoving party.

*Giant Screen Sports v. Canadian Imperial Bank of Commerce*, **553 F.3d 527, 531-32 (7th Cir. 2009).**

Stated another way, to counter a summary judgment motion, the nonmoving party may not simply reiterate the allegations contained in his pleadings; more substantial evidence must be presented. And a genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 247 (1986)**, or "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, **475 U.S. 574, 586 (1986).** Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Anderson*, **477 U.S. at 252.**

<b><u>Analysis</u></b>

**1.    The evidentiary record**

According to plaintiff's deposition, he has been in the IDOC since 1987. Prior to his incarceration, he had been a police officer. Doc. 42, Ex. A, p. 4. Because he is designated a

"Level E" inmate, he is frequently moved from institution to institution. Ex. A, pp. 4-5. From February, 2005, to February, 2006, he was assigned to Menard. Ex. A, p. 7. Tellez was housed in the protective custody unit at his request because his status as a former police officer made it dangerous for him to live in general population. Ex. A, pp 28-29. At that time, there were no designated non-smoking cells in the protective custody unit at Menard. Ex. A., pp. 27, 29. The procedure was that a protective custody inmate could request a non-smoking cellmate by signing a form. Ex. A, p. 23.

      Plaintiff attached twelve exhibits to his response to an earlier motion, Doc. 34. He relies on those exhibits here. The exhibits are numbered 18 through 29. Exhibits 18 through 23 concern a grievance that plaintiff filed in 1999 about an officer named Johnson refusing to put him in a cell with a non-smoker. Given the time frame and the fact that Johnson is not a defendant here, those exhibits are of no relevance. Exhibit 24 is a 1999 grievance about officer Tourville putting him in a cell with a smoker, and is not relevant for the same reasons.

      Exhibit 25 concerns a grievance written by plaintiff on May 24, 2007. This grievance states that, since plaintiff's transfer back to Menard on February 27, 2007, he has been exposed to tobacco smoke rising from 2 gallery to 4 gallery. Tellez suggests that the non-smokers in protective custody all be housed in the front half of 2 gallery. The Counselor's Response states that Tellez is an "extreme high escape" risk and, for the safety and security of the institution, inmates are not allowed to choose their own celling locations. This grievance post-dates the period of time in issue and is of no relevance.

      Exhibits 26 through 29 are affidavits from other protective custody unit inmates. Inmates Duane Roach and Mark Smith state that, in 2005, they were non-smokers and they requested that

they be celled with non-smokers. However, both inmates were assigned to live with smokers. Inmates Tony Mitros and Steven Ellison state that, in 2005, they were smokers but were celled with Mark Smith and Tellez, both of whom wanted non-smoking cellmates.

The exhibits attached to the complaint establish that Tellez signed a request for a non-smoking cellmate on March 3, 2005. On April 19, 2005, Tellez wrote a letter to Betsy Spiller asking to be assigned a non-smoking cellmate, and referencing the fact that he had similar problems back in 1999 and 2003, when he filed a lawsuit. (That lawsuit, Case No. 01-612-MJR was dismissed on preliminary review for failure to state a claim on October 6, 2004.)

On April 18, 2005, Tellez filed a grievance about being housed with smokers. In the Counselor's Response, Reardon wrote "Every effort is made to cell non-smokers together. However, with the limited amount of beds in the PC unit it is not always possible."

Plaintiff's affidavit attached to Doc. 1 states that he talked to Reardon on March 3, 2005, and asked to be housed with a non-smoker. About two weeks later, inmate Roach, who did not smoke, was assigned to plaintiff's cell. However, on April 18, 2005, Roach was moved out and a smoker was moved in. Thereafter, Tellez spoke with Waller, McDaniels, and Moore, with "negative results."

On May 3, 2005, he wrote a letter to Major Ramos, complaining abut being housed with smokers. Major Ramos responded by way of a memo dated June 8, 2005, in which he stated that "Due to the physical constraints of the Protective Custody area and the amount of requests received, non-smoking assignments are not possible due to the limited amount of cells." The memo went on to suggest that Tellez could ask to be assigned to general population where there were designated non-smoking cells, or file a grievance.

5

On June 30, 2005, Counselor Alms wrote plaintiff a note which said that he was not "listed as a non-smoker." On July 13, 2005, Tellez filed another grievance about being housed with smokers. The Counselor's Response again stated that there are no designated non-smoking cells in the protective custody unit.

On October 18, 2005, Assistant Warden Condor responded to a letter from plaintiff, again stating that the protective custody unit is not "designated as a non-smoking housing unit."

Also attached to the complaint are affidavits from other inmates. Inmate Dennis Glick's affidavit, dated October 25, 2005, states that he is a non-smoker and he has requested a non-smoking cellmate, but he has been housed in the protective custody unit with a cellmate who smokes. Inmate Michael Daniels' affidavit states that, after plaintiff was transferred out of Menard in February, 2006, four cells in the protective custody unit were designated as non-smoking.

**2.    Count 1, Exposure to ETS**

As a general proposition, the Constitution does not require a prison to provide a completely smoke-free environment. "A prison is not required to provide a completely smoke-free environment, except for prisoners who have asthma or some other serious respiratory condition that even a low level of ambient smoke would aggravate. [internal citations omitted.] A normal prisoner must prove that he 'is being exposed to *unreasonably high levels* of ETS [environmental tobacco smoke].' *Helling v. McKinney*, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (emphasis added)." **Powers v. Snyder, 484 F.3d 929, 932 (7th Cir. 2007)**

While there is no general constitutional right to a smoke-free environment, or to a non-smoking cellmate, a prison inmate's Eighth Amendment rights can be violated by exposure to

ETS under certain circumstances.

First, an inmate can state an Eighth Amendment claim for *present* injury if he alleges that he has "serious existing health problems" due to exposure to ETS, and that prison officials are aware of and have disregarded those health problems. ***Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999).** Here, plaintiff does not claim to have suffered a present injury. His claim is for future injury. The Supreme Court held in 1993 that a prison inmate "states a cause of action under the Eighth Amendment by alleging that [defendants] have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health.*" **Helling v. McKinney*, 113 S.Ct. 2475, 2482 (1993).**

In order to prevail on such a claim, plaintiff must satisfy both the objective and the subjective prongs of the test described in ***Farmer v. Brennan*, 114 S. Ct. 1970, 1977 (1994).** To satisfy the objective test, plaintiff "must show that he himself is being exposed to unreasonably high levels of ETS." ***Helling*, 113 S. Ct. at 2482**. The objective prong "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." ***Id.*** [1]

In order to satisfy the subjective prong of the test, the evidence must show that

---

[1] Plaintiff's claim arose prior to the effective date of the "Smoke Free Illinois Act," 410 ILCS 82/1 et seq. Thus, the enactment of that law is of no relevance here. The Court expresses no opinion as to how, if at all, the enactment of that law would affect the ***Helling*** analysis.

7

defendants acted with deliberate indifference to the fact that plaintiff is exposed to levels of ETS which "pose an unreasonable risk of serious damage to his future health." **Helling, 509 U.S. at 35, 113 S. Ct. at 2481.** Further, liability under 42 U.S.C. §1983 is personal; there is no liability unless the defendant "caused or participated" in the deprivation of a constitutional right. **Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996)**. Thus, the two-prong *Farmer* test must be satisfied separately as to each defendant.

In **Henderson v. Sheahan, 196 F.3d 839, 842 (7th Cir. 1999)**, the Seventh Circuit held that summary judgment was proper on a claim for future injury due to ETS exposure where the plaintiff failed to produce "competent and reliable expert medical testimony that there [is] a reasonable medical certainty that he himself faces some defined level of increased risk of developing a serious medical condition and that this increased risk was proximately caused by his exposure to second-hand smoke." Defendants argue that they are entitled to judgment because Tellez has not produced such evidence here.

Plaintiff's deposition is attached to Doc. 42 as Ex. A. It is clear that Tellez does not claim that he presently has a medical condition which makes him sensitive to ETS or which is aggravated by such exposure. Ex. A, pp. 9-15. It is also clear that Tellez has not produced the expert medical evidence as to his increased risk of developing a serious medical condition as required by *Henderson*.

The testimony at pages 19 through 21 of plaintiff's deposition establishes that plaintiff does not have the requisite evidence. He testified that no doctor has told him that he is at increased risk for future harm caused by exposure to ETS during the relevant period. Ex. A, pp. 19-20. When asked what evidence he would present at trial to show that he is at some increased

risk of developing health problems caused by ETS exposure, he answered that he would present documents from the "National Cancer Institute stating that secondhand smoke is a problem." Ex. A, p. 20.  However, these documents are about the dangers of secondhand smoke in general, and are not in any way specific to him.  Ex. A., pp. 20-21.  Plaintiff's answer to defendants' Interrogatory number 11 contains the same information.  Doc. 42, Ex. B.

In his response to the motion, Doc. 45, Tellez does not identify any competent evidence to establish that he faces an increased risk of developing a serious medical condition due to ETS exposure.  He points out that, after he was transferred out of Menard in 2006, he suffered chest pains.  Doc. 45, p. 3.  However, he testified in his deposition that no doctor ever told him that the chest pains were caused by exposure to ETS.  Ex. A., pp. 12-13.  He also states that, during his annual check-ups, various doctors have advised him not to smoke.  Doc. 45, p. 5.  However, there is an obvious difference between advising a patient not to smoke and offering an opinion that the patient faces some defined level of  increased risk of developing health problems due to secondhand smoke exposure during a specific period of time, which is what is required here.

Allowing plaintiff to proceed to trial without evidence that he faces a defined level of increased risk of harm caused by ETS exposure at Menard in the relevant time frame, as required by *Henderson*, would vitiate the principle that the Constitution does not guarantee an inmate a smoke-free environment.  It is clear that, in order to satisfy the objective prong of the *Farmer* test, the plaintiff in a case such as this must show that he was exposed to "levels of ETS that pose an unreasonable risk of serious damage to his future health."  *Helling v. McKinney*, **113 S. Ct. 2475, 2481 (1993).**  This requires *evidence* of the level of increased risk, and *evidence* that the increased risk is caused by the exposure to secondhand smoke during the period in question.

9

It is not enough to simply say that people in general face a risk of adverse health effects from secondhand smoke exposure. Because Tellez has not produced the required evidence in response to the motion for summary judgment, the motion must be granted as to Count 1.

Similarly, plaintiff has failed to produce any evidence that any defendant retaliated against him for complaining about ETS by assigning him cellmates who smoked.

### 3. Count 2, Retaliation

Prison officials may not retaliate against inmates for exercising their First Amendment rights. "To prevail on a First Amendment retaliation claim, [Plaintiff] must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action." ***Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)(internal citations omitted)**.

With regard to the third element, the plaintiff must show the existence of "a causal link between the protected act and the alleged retaliation." ***Woodruff v. Mason*, 542 F. 3d 545, 551(7th Cir. 2008)(internal citations omitted).** Thus, plaintiff is required to show that his exercise of his First Amendment rights was a "motivating factor" for defendant's actions; he can do this by either direct or circumstantial evidence. *Id.* At the summary judgment stage, plaintiff must come forward with some evidence of causation; "mere speculation" is not sufficient. ***Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 544 F.3d 752, 757 (7th Cir. 2008).**

In his response to the motion and in his deposition, plaintiff suggested that he could not produce evidence of retaliation until defendants responded to his interrogatories. The discovery

10

deadline in this case was June 2, 2009; discovery requests were to be served in time to allow the full 30-day period in which to respond. See, Scheduling Order, Doc. 26. Plaintiff mailed his interrogatories on May 19, 2009. Doc. 42, Ex. C. Defendants objected that the interrogatories were untimely, which they were, and did not answer. See, letter of June 17, 2009, attached to Doc. 45.

Plaintiff did not move to compel defendants to answer his interrogatories, and did not ask the Court to extend the time for discovery. He cannot now stave off summary judgment because his interrogatories have not been answered. In any event, the Court has reviewed the interrogatories, attached to Doc. 42 as Exhibit C, and finds it highly unlikely that defendants' responses thereto would have provided evidence to indicate retaliation. The questions mostly concern the identity of persons who were responsible for making cell assignments, the procedures for cell assignments, and whether defendants were aware that plaintiff wanted a non-smoking cellmate.

In his response to the motion, plaintiff states that he relies on the previously-produced exhibits to demonstrate retaliation. He is referring to the exhibits attached to his response to defendants' first motion for summary judgment, Doc. 34, and to his complaint.

The Court has carefully reviewed plaintiff's exhibits, and concludes that they do not rise to the level of evidence of a causal link between his complaints and grievances and the defendants' actions.

The exhibits attached to the complaint and Doc. 34 establish that plaintiff repeatedly requested a non-smoking cellmate. He filed grievances and wrote letters. The responses from prison employees were consistent: there are no designated non-smoking cells in protective

custody; an inmate can request a non-smoking cellmate, but such requests cannot always be honored due to size limitations in the protective custody unit.

Plaintiff's exhibits do not establish or even suggest that any defendant retaliated against him. In fact, the affidavits from other inmates undercut his retaliation claim, in that they establish that other non-smokers were also celled with smokers. Defendants are entitled to summary judgment on the retaliation claim as well.

### Conclusion

The record in this case clearly establishes that defendants are entitled to judgment on both of plaintiff's claims. Plaintiff has not produced any evidence to demonstrate that there is a genuine issue as to any material fact with regard to either claim. Accordingly, defendants' Motion for Summary Judgment **(Doc. 42)** is **GRANTED**.

The Clerk of Court is directed to enter judgment in favor of defendants Alan Uchtman, Betsy Spiller, William Reardon, Lieutenant Roger Waller, and Sergeant Charles McDaniels.

As this Order is a final disposition of all claims, the Clerk of Court is directed to enter final judgment and close this case.

**IT IS SO ORDERED.**

**DATE: March 1, 2010.**

> s/ Clifford J. Proud
> **CLIFFORD J. PROUD**
> **UNITED STATES MAGISTRATE JUDGE**